John KENNEDY, Individually, and John Kennedy, on Behalf of Red Bird Hospital Pharmacy, Appellants,

v.

KENTUCKY BOARD OF PHARMACY, Appellee.

No. 89–CA–2514–S.

Court of Appeals of Kentucky.

Sept. 7, 1990.

Discretionary Review Denied by Supreme Court Dec. 19, 1990.

Gary H. Gregory, Manchester, Elmer Heist, Heist & Little, Burkesville, for appellants.

Frederic J. Cowan, Atty. Gen., Richard C. Carroll, Asst. Atty. Gen., Frankfort, for appellee.

Before GUDGEL, LESTER and McDONALD, JJ.

McDONALD, Judge.

John Kennedy appealed from the judgment of the Clay Circuit Court which affirmed the decision of the appellee, Kentucky Board of Pharmacy, to suspend his license for one year and which imposed a $4,000 fine. The board found that Kennedy, a licensed pharmacist, violated KRS 315.036(1) and 315.036(2), and engaged in unethical conduct as contemplated by KRS 315.121(1)(f). We agree with Kennedy that the board erred as a matter of law, necessitating reversal of its findings and conclusions.

The facts are well known to the parties and need not be set out at length in this opinion. Briefly, Kennedy has been a licensed pharmacist for many years and had a permit from the board to operate the Red

Bird Hospital Pharmacy. Four times a year Kennedy gathered up his excess drugs [1] and sold them to a drug wholesaler, Elite Supply Company.[2] Included in these sales were birth control pills, the invoices for which were stamped by the manufacturer, Wyeth Laboratories, "For clinic use only. This specifically priced merchandise is not intended for resale or distribution outside the clinic."

■ This appeal concerns the board's interpretation of several statutes contained in KRS 315 *et seq.*, the chapter entitled "Pharmacists and Pharmacies." Certain definitions in the chapter are crucial to the appellant's arguments. KRS 315.010(6), (7), (10), and (12) read thusly:

(6) "Manufacturer" means any person, except a pharmacist, within the Commonwealth engaged in the commercial production, preparation, propagation, compounding, conversion or processing of a drug, either directly or indirectly, by extraction from substances of natural origin or independently by means of chemical synthesis, or both, and includes any packaging or repackaging of a drug or the labeling or relabeling of its container.

(7) "Pharmacist" means a natural person licensed by this state to engage in the practice of the profession of pharmacy.

. . . .

(10) "Practice of pharmacy" means a health service which includes the dispensing, storage, and instruction as to the proper use of drugs, including radioactive substances, and related devices, the maintenance and management of health and the encouragement of safety and efficacy in those activities.

. . . .

(12) "Wholesaler" means any person, except a pharmacist, within the Commonwealth who legally buys drugs for resale and distribution to persons other than patients or consumers.

---

1. None of the drugs involved in these transfers were narcotics.

2. There was no allegation or finding that Elite Supply Company was anything other than a legitimate drug supply business.

The two statutory provisions Kennedy was found to violate provide as follows:

315.036. Permit to be acquired by manufacturer or wholesaler—Fee—Records required—Reports.—(1) Any manufacturer or wholesaler of drugs shall be required to register with and obtain a permit from the board. Such permit shall be issued in accordance with policy and procedure prescribed by regulations of the board. The board may charge a reasonable permit fee not to exceed $100.00 for a manufacturer and for a wholesaler.

(2) Manufacturers and wholesalers shall be required to maintain accurate records of all drugs manufactured, received and sold. Such records shall be made available to agents of the board for inspection at reasonable times. The board may require by regulation that manufacturers and wholesalers periodically report to the board all drugs manufactured, received and sold.

Kennedy's argument, with which we agree, is that the board erred in disciplining him under the statutes pertaining to manufacturers and wholesalers as, by definition, he is neither a manufacturer nor wholesaler. In clear, plain terms the definitions previously set forth specifically exclude a pharmacist from the category consisting of manufacturers and wholesalers. The board argues, and the circuit court agreed, that Kennedy is not entitled to be excluded from the category of a manufacturer or wholesaler when acting as a pharmacist as defined in KRS 315.010(10). We are not persuaded the argument supports the board's decision for two reasons. First, it seems quite reasonable to us that selling excess drugs before they become stale or expire is conduct that would fall within the definition of the "practice of pharmacy." At least there was no evidence to the contrary. Secondly, there are other statutory provisions in the chapter applicable to pharmacists, specifically KRS 315.035 and KRS 315.121, which permit the board to set standards of conduct and to regulate the practice of pharmacy. If Kennedy's conduct in selling excess prescription drugs offended any statute or regula-

tion pertaining to pharmacists, the board has yet to so allege.

It is basic that in construing a statute the courts must examine and give effect to each word, clause or sentence that allows for reasonableness. *Hampton v. Commonwealth*, 257 Ky. 626, 78 S.W.2d 748 (1934). We must assume the legislature had a purpose for differentiating between "pharmacists" and "wholesalers." To ignore the difference, as did the board, does violence to the well-established principle that words specifically defined by statute "must be given the meaning prescribed by the legislature in construing the statute." *Kentucky Farm Bureau Mut. Ins. Co. v. Mason*, Ky.App., 600 S.W.2d 483 (1980); see also *Baker v. Commonwealth*, Ky., 677 S.W.2d 876 (1984). Thus we conclude the board erred as a matter of law in disciplining Kennedy for his failure to get a wholesaler's license.

We also agree with Kennedy that the board erred in concluding that his conduct was "unethical or unprofessional" and of a "character likely to deceive, defraud or harm the public." This charge was predicated on the resale of the birth control pills originally obtained from Wyeth Laboratories under invoices indicating the medication was not intended for resale.

Kennedy's claim in this regard is that the statute is unconstitutionally vague. However, we need not reach that issue as there is simply no evidence in support of the board's finding that the public was being, or was likely to be, deceived, defrauded or harmed. Kennedy's explanation for the resale of the birth control pills was that he was required to purchase larger quantities than the Red Bird Pharmacy could handle in order to get a price his customers could afford to pay. The board offered no evidence whatsoever contradicting Kennedy's motives. There is not the slightest evidence that Kennedy personally benefitted, financially or otherwise, from these transactions.

Conceivably Kennedy was defrauding Wyeth Laboratories (although the record before the board does not establish the

elements of fraud), or perhaps his conduct constituted a breach of his contract with that firm. But Wyeth did not participate in the hearing. As far as we know, Wyeth has never lodged any complaint against Kennedy before any tribunal, administrative or judicial. In any event Kennedy's actions vis a vis Wyeth did not amount to unprofessional conduct as contemplated by the legislature in KRS 315.121(1)(f). Never was the conduct of reselling the birth control pills to another drug company shown to deceive, defraud or harm the *public*. Such a showing is essential, we believe, to any charge of unprofessional conduct, again by reference to the plain words of the statute.

The judgment of the Clay Circuit Court is reversed with directions to remand the matter to the board for dismissal of the charges against the appellant.

All concur.